IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MISTY D. BUTCHER                                                    PLAINTIFF

V.                                       NO. 15-5293

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Misty D. Butcher, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.       **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on September 27, 2012, alleging an inability to work since September 1, 2012, due to multiple sclerosis, diabetes, and high blood pressure. (Doc. 14, pp. 198-211, 235, 239). An administrative hearing was held on June 13, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 14, pp. 23-51).

1

By written decision dated July 8, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – diabetes mellitus; multiple sclerosis; obesity; and dysthymic disorder. (Doc. 14, p. 57). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 14, p. 58). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) within the following parameters: the claimant can occasionally lift up to 10 pounds; frequently lift less than 10 pounds; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; occasionally climb stairs or ramps; occasionally balance, stoop, kneel, crouch or crawl; frequently (but not constantly) handle and finger bilaterally; and must avoid concentrated exposure to extreme cold/heat and to hazards (such as dangerous moving machinery and unprotected heights). Mentally, the claimant is able to understand, remember and carry out short, simple instructions.

(Doc. 14, p. 61). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform such jobs as final assembler; jewelry preparer; and egg processor. (Doc. 14, p. 70).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 9, 2015. (Doc. 14, pp. 5-10). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11-13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R.§§ 404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520; 416.920.

**III.   Discussion:**

Plaintiff raises the following issue in this matter: Whether the ALJ erred in his RFC determination. (Doc. 11).

**A.  Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies

4

appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In her decision, the ALJ addressed Plaintiff's daily activities, noting that Plaintiff cleaned, shopped, cooked, took public transportation, payed bills, maintained a residence, cared for grooming and hygiene, used telephones and directories, and used a post office. (Doc. 14, p. 59). The ALJ also noted that Plaintiff sought minimal mental health treatment, and was reported as being non-compliant. (Doc. 14, pp. 60, 65). It is also noteworthy that Plaintiff smoked cigarettes, and although she was frequently counseled to quit smoking, she continued.

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

**B.  RFC Determination:**

Plaintiff argues that the ALJ failed to properly consider and evaluate all of the evidence, and ignored or minimized evidence favorable to Plaintiff, and that had she not done so, the ALJ would have found Plaintiff could not perform any competitive jobs.

As indicated earlier, the ALJ found Plaintiff retained the RFC to perform sedentary work with certain limitations. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Gilliam's v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a

"claimant's residual functional capacity is a medical question." <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. <u>Lewis v. Barnhart</u>, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." <u>Id</u>. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" <u>Barrows v. Colvin</u>, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from <u>Willms v. Colvin</u>, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013)).

With respect to Plaintiff's physical limitations, in one of the earlier records, dated May 9, 2012, it was reported that Plaintiff had not been treating her chronic conditions for one year. (Doc. 14, p. 327). It was also reported at that time that Plaintiff moved her extremities well, her speech was normal, her affect was normal, and her memory and gait were normal. (Doc. 14, p. 332). Between June of 2012 and September of 2012, Plaintiff missed several doctors' appointments at the Cherokee Nation Health Services. (Doc. 14, pp. 314-317).

On December 11, 2012, Plaintiff visited the Jay Community Clinic, and reported she had run out of all of her medications one month prior, secondary to a move. (Doc. 14, p. 421). The report noted Plaintiff's history of HTN (hypertension), diabetes mellitus II, and multiple sclerosis (MS). (Doc. 14, p. 427).

On February 2, 2013, Plaintiff underwent a physical examination by Dr. David Weigman. (Doc. 14, p. 399). Dr. Wiegman reported that Plaintiff indicated she was diagnosed with MS about five years previously, and that it was causing her some problems

with concentration and had some left leg twitching, mainly at night. (Doc. 14, p. 399). She also reported uncontrolled diabetes. (Doc. 14, p. 399). Dr. Wiegman reported Plaintiff's arm and leg strength seemed to be normal at 5/5; her grip strength was normal at 5/5; her arm, leg, back and neck revealed normal ranges of motion; and no joint swelling, erythema, effusion, or deformities were noted. (Doc. 14, p. 400). She had a normal symmetric steady gait, had difficulty walking on her toes and heels separately, and had difficulty walking heel-to-toe due to losing her balance. (Doc. 14, p. 400). Dr. Weigman diagnosed Plaintiff with MS, noting that her fatigue and stiffness was most likely due to her inactivity; uncontrolled diabetes; and hypertension. (Doc. 14, p. 401).

In a Disability Determination Explanation, dated March 1, 2013, non-examining consultants, Dr. Roberta Herman and Burnard Pearce, Ph.D., concluded that Plaintiff did not have a severe physical or mental impairment, respectively. (Doc. 14, p. 82-82). On March 11, 2013, when Plaintiff presented to Jay Community Clinic for a three month evaluation and management of diabetes mellitus, dyslipidemia, GERD, HTN, and obesity, her non-compliance and smoking cessation were discussed. A CT scan of the chest was recommended, because a nodule on the right mid lung was found. (Doc. 14, pp. 416-418). The CT scan was performed on April 15, 2013, and a 6 week follow-up or PET CT scan was recommended. (Doc. 14, p. 448).

Plaintiff presented to the Marcus Clinic as a new patient on September 13, 2013, seeking medication refills. (Doc 14, p. 437). She reported that she ran out of medications two weeks prior. (Doc. 14, p. 437). Plaintiff was diagnosed with diabetes mellitus, Type 2, uncontrolled; dyslipidemia; hypertension; and depression. (Doc. 14, p. 440). Plaintiff thereafter had x-rays of her chest performed on November 6, 2013, which revealed:

1.  With H/O previous pulmonary nodules, there is a 1.6 cm noncalcified nodule right mid lung field. If outside examinations are made available comparison addendum dictation will be made. Otherwise follow up within 3-4 months is considered to insure stability.
    No acute pleura-parenchymal process seen. No failure identified.

(Doc. 14, p. 452).

On November 6, 2013, Dr. Stephen J. Veit conducted a Wellness and Preventative exam. (Doc. 14, p. 469). He reported that Plaintiff was a poor historian, but she denied pain or weakness, tremors, loss of balance or coordination, and she had a balanced gait. (Doc. 14, pp. 469-470). Plaintiff did have some decreased sensation over the first three toes during filament testing, and Dr. Veit reported he gave Plaintiff a strong, clear, personalized message urging smoking cessation. (Doc. 14, p. 470).

Plaintiff first began seeing Dr. Elizabeth M. Hartman, Board Certified Neurologist, Multiple Sclerosis Specialist, on December 5, 2013. (Doc. 14, p. 451). On December 23, 2013, a MRI of Plaintiff's cervical spine was performed, which revealed:

1.  Multiple T2 and FLAIR hyperintensities within cord white matter however no expansile lesion or evidence of enhancing white matter tract lesion identified. This is consistent with severe previous white matter tract plaque and again is greatest at cordlevel of C2 through C4 and then hyperintense signal at level of C6.

    This would most likely suggest (given the same time frame evaluation of brain MRI exam); as lesions consistent with extensive MS type disease consistent with previous prominent demyelination. Of note, no significant enhancement post contrast administration of these lesions is detected to indicate an active white matter tract disease.

(Doc. 14, p. 451).

Plaintiff thereafter went to Dr. Veit for management of her diabetes. (Doc. 14, pp. 455-456, 460, 484).

On March 31, 2014, Plaintiff saw Dr. Hartman for a recheck of her MS. (Doc. 14, p. 475). Plaintiff reported to Dr. Hartman that there was some improvement since taking medication for her depression, and that the auditory hallucinations had resolved. (Doc. 14, p. 475). Dr. Hartman reported that Plaintiff's gait was limited and slowed. (Doc. 14, p. 475). She reported 5/5 strength in all muscle groups of bilateral upper and lower extremities; tone was normal throughout; there was no atrophy noted in the upper and lower extremities; and her reflexes were 2+/4 and symmetric in bilateral upper and lower extremities except absent at ankles. Plaintiff reported "decreased temp" in left upper extremity and right lower extremity, pinprick was intact throughout without gradient vibration 5-10 seconds at bilateral toes and moderately reduced in "DE's Coordination;" there were no tremor or abnormal movements; finger to nose was normal; and gait and station was slow but steady. (Doc. 14, p. 477). Dr. Hartman concluded that Plaintiff had a significant chronic burden of MS as noted on the Brain MRI, which placed her at "high risk for future disability and secondary progressive disease, though fortunately had not had any clear new clinical relapses." (Doc. 14, p. 478). Dr. Hartman reported that Plaintiff was stable and tolerating Tecfidera well since January of 2014. (Doc. 14, p. 478).

Less than one month later, on April 23, 2014, Dr. Hartman completed a Physical RFC Assessment. (Doc. 14, p. 442). In said assessment, Dr. Hartman found Plaintiff to have many severe limitations, and concluded that Plaintiff had significant, permanent disability related to a chronic neurodegenerative disease, with both subjective and objective evidence of impairments. (Doc. 14, p. 445).

In his decision, the ALJ noted Plaintiff's non-compliance, referencing Plaintiff's failure to take her medications and her frequent "no-shows" for appointments. (Doc. 14, p.

9

64). The ALJ also mentioned the fact that Plaintiff received little or no actual medical treatment between the onset date of September 1, 2011 and May 9, 2012. (Doc. 14, p. 64). The ALJ addressed the physical consultative examination by Dr. Wiegman, and the records of Dr. Veit. (Doc. 14, p. 65). The ALJ gave considerable weight to Dr. Wiegman's findings. (Doc. 14, p. 66). The ALJ carefully addressed Dr. Hartman's opinions, and gave them "some weight in support of a finding that the claimant is limited to the performance of work at the sedentary exertional level." (Doc. 14, p. 7). The ALJ found that many of Dr. Hartman's other conclusions were out of proportion with the overall record, including the findings of Dr. Wiegman and Dr. Hartman's own treatment notes, which the ALJ believed contained very few objective findings on examination. (Doc. 14, p. 67). The ALJ finally concluded that Plaintiff's current allegations were very rarely reported in treatment records, and that many did not appear to have been listed among her complaints prior to the March 2014 appointment with Dr. Hartman. (Doc. 14, p. 67). The ALJ also noted that treating and examining providers had noted relatively few objective findings that would support limitations to the extent now described by the claimant. (Doc. 14, p. 67).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of

such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

The Court recognizes the fact that Dr. Hartman is a neurologist and MS Specialist. However, at the March 31, 2014 visit, Dr. Hartman's findings were not consistent with the severe limitations she expressed in the April 23, 2014 Physical RFC assessment. For example, in the March 31, 2014 report, Dr. Hartman reported that over the prior month, at the end of day after sitting down, Plaintiff noted pain in her feet which may radiate up to calf level bilaterally, and that Plaintiff had mild improvement with Tylenol, but it usually resolved spontaneously, or occasionally might make it difficult to fall asleep. (Doc. 14, p. 475). It was noted that stretching at the ankles may improve discomfort. Dr. Hartman reported no other new neurological symptoms. Upon physical examination, Dr. Hartman reported Plaintiff's mood was appropriate, her pupils were equal, round, and reactive to direct and indirect light as well as near response; her visual acuity was intact bilaterally, III, IV, VI; her shoulder shrug was equal and strong bilaterally; her motor strength was 5/5 in all muscle groups of bilateral upper and lower extremities; she had normal tone throughout; no atrophy was noted in the upper and lower extremities; reflexes were 2+/4 and symmetric in bilateral upper and lower extremities except absent at ankles; there were no tremors or abnormal movements; and her gait and station were slow but steady. (Doc. 14, p. 477). Dr. Hartman found Plaintiff to be stable and tolerating Tecfidera well since January of 2014. Plaintiff was to continue the Tecfidera, check her CBC, recheck her Vitamin D and ICV Ab status, continue glycemic, lipid control and smoking cessation efforts, and Dr. Hartman believed that Plaintiff's lower extremity pain symptoms might be related to mild diabetic

neuropathy, and offered a trial of gabapentin PRN. Plaintiff preferred to defer that, and Dr. Hartman also suggested that Plaintiff consider the use of wrist splints if there was increased nighttime UE paresthesias. (Doc. 14, p. 478).

Clearly, Dr. Hartman's March 31, 2014 report is inconsistent with the severe limitations Dr. Hartman indicated in the Physical RFC assessment she completed less than one month later. Accordingly, the Court believes the ALJ was justified in discounting Dr. Hartman's Physical RFC assessment, and sufficiently explained his reasons for doing so. In addition, Dr. Hartman's April 2014 opinion was inconsistent with the findings of Dr. Wiegman.

Regarding Plaintiff's mental limitations, Plaintiff argues that the ALJ failed to properly include functional limitations relating to Plaintiff's mild and moderate mental limitations. In his decision, the ALJ found that Plaintiff suffered from the severe impairment of dysthymic disorder. (Doc. 14, p. 57). The ALJ found that Plaintiff's apparent ability to manage household chores and finances supported a finding that Plaintiff would be able to understand short, simple instructions. (Doc. 14, p. 63). The ALJ pointed to Plaintiff's testimony at the hearing where she acknowledged that her mental health treatment had been limited to medication prescribed by her primary care physician, Dr. Veit. (Doc. 14, p. 67). Plaintiff had not been seen for therapy or counseling, and had never been referred to a psychologist or psychiatrist. The ALJ found that this was not consistent with mental health symptoms of the severity now alleged, such as regular suicidal thoughts and hallucinations. (Doc. 14, p. 67). The ALJ also discussed the fact that at an appointment in December of 2012, normal mood, affect, memory and judgment were reported. (Doc. 14, p. 68). Although Dr. Hartman's summary from January 10, 2014 did refer to "auditory hallucinations of

unclear etiology," which Dr. Hartman believed were "possibly related to depression/stressors [and] unlikely related to MS or other primary neurological process" (Doc. 14, p. 68), on March 31, 2014, Plaintiff reported to Dr. Hartman that her depression had improved and her reported auditory hallucinations had resolved. (Doc. 14, p. 68).

The ALJ also addressed the psychological consultative examination Plaintiff underwent with Melinda Shaver, PsyD., on January 30, 2013. Ms. Shaver noted that Plaintiff's mood appeared dysthymic and her affect was flattened, but that Plaintiff was cooperative and friendly, with good eye contact, appropriate behavior, and her speech was relevant and coherent. (Doc. 14, p. 68). Ms. Shaver gave Plaintiff a GAF score of 65, which is generally indicative of only mild symptoms or some difficulty in social/occupation functioning, but generally functioning pretty well. The ALJ gave this opinion considerable weight. (Doc. 14, p. 68).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC determination, and the weight she gave the opinions of the various physicians.

**C. Hypothetical Question:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform jobs such as final assembler, jewelry preparer, and egg

processor. <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.   The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of January, 2017.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

14